**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1896-18T3

SHAKEEM MALIK HOLMES,

Plaintiff-Respondent,

v.

JERSEY CITY POLICE DEPARTMENT,

Defendant-Appellant.

______________________________

Argued February 24, 2020 – Decided May 8, 2020

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0696-14.

Stevie D. Chambers, Assistant Corporation Counsel, argued the cause for appellant (Peter Baker, Corporation Counsel, attorney; Stevie D. Chambers, of counsel and on the briefs).

Deborah L. Mains argued the cause for respondent (Costello & Mains, LLC, attorneys; Deborah L. Mains, of counsel and on the brief).

PER CURIAM

This litigation returns to us following our published opinion that the motion court erred in granting defendant Jersey City Police Department (JCPD) summary judgment dismissal of the transgender plaintiff's complaint under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD) and that the matter be remanded for trial. Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 601 (App. Div. 2017). We concluded plaintiff should be permitted to present his claims to a jury because "[u]nder all the circumstances, a jury could find that the [alleged] conduct [by JCPD police officers] was sufficiently severe that a reasonable transgender person in plaintiff's position would find the environment to be hostile, threatening and demeaning." (Id. at 603).

The jury subsequently determined plaintiff's allegations were truthful and his rights under the LAD were violated but did not award him compensatory damages. The trial court, which did not grant the summary judgment order, granted plaintiff's post-trial motions ordering the JCPD to: (1) provide annual training on transgender discrimination to its entire police department as equitable relief for the hostile and discriminatory conduct inflicted upon plaintiff; and (2) pay plaintiff's attorneys' fees and costs related to pretrial, trial, and post-trial services. The JCPD appeals those orders. For the reasons that

follow, we affirm the award of attorneys' fees and costs related to services other than the equitable relief motion, and reverse and remand the orders awarding equitable relief and attorneys' fees and costs associated with equitable relief.

I.

Since there is no challenge to the jury's verdict that the JCPD violated plaintiff's rights under the LAD, and the underlying facts are fully detailed in our published decision reversing summary judgment, a brief summary of the facts will suffice. Plaintiff identifies as a man of transgender experience.[1] He acquired a name change in New York, taking his current name, and then obtained a New Jersey driver's license listing his gender identification as male.

On or about February 2, 2013, plaintiff was arrested for shoplifting in Jersey City. Plaintiff gave Jersey City police officers his name as it was on his driver's license and presented his license when requested. He was taken into custody and placed into a male holding cell at the Jersey City police station. He was fingerprinted and returned to the cell.

After receiving the results of the fingerprinting, JCPD officers accused plaintiff of lying, and yelled at him asking "who the fuck is Malika Holmes?"

---

[1] As he explained in his testimony, Holmes was born Malika Holmes and in a female body. He chose to transition into a male and prefers to be referred to as a male.

Plaintiff lied, saying Malika was his twin sister and asked for the sergeant on duty, who happened to be one of the officers berating him. Plaintiff was removed from his cell and the police officers subjected him to intense questioning and profane and degrading remarks about his gender, anatomy, and other characteristics. He was placed in a female cell by himself where the humiliating remarks continued until his release.

At the trial's conclusion on May 3, 2018, the jury found the police officers' conduct in a place of public accommodation was discriminatory and in violation of the LAD, for which the JCPD was liable. The jury, however, did not award plaintiff any compensatory damages for the police officers' misconduct.

Plaintiff made post-trial motions for: (1) a new trial on damages, or in the alternative, additur; (2) equitable relief requiring the JCPD to provide annual transgender awareness training for all its employees, as well as several other forms of similar relief; and (3) attorneys' fees and costs. Hearing oral argument on June 8, the court reserved decision.

As for plaintiff's equitable relief requests, the court ordered the JCPD "to provide, by way of in camera review, all training and policies implemented since January 1, 2014 with regard to diversity, anti-harassment, EEO and discrimination, with particular focus on but not limited to transgender

individuals." The court rejected the JCPD's argument that reviewing the policies was improper because the equitable relief request had not been raised before trial and the JCPD's request to provide additional briefing on the issue. On July 8, the JCPD complied with the court's directive by providing the training documents.

On September 14, the court issued an order denying plaintiff's motion for a new trial on damages, or in the alternative, additur. Plaintiff does not appeal that ruling. The court memorialized its reasons in the order.

Three months later, on October 4, the court issued an order and a four-page opinion partially granting plaintiff's request for equitable relief. The order stated: "That sensitivity training be repeated yearly for all existing employees and for all new employees hired in between such training events[.]"

The court's post-trial opinion reasoned that equitable relief in the form of training for JCPD employees was in accord with L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ., 381 N.J. Super 465 (App Div. 2005). The court rejected the JCPD's argument that plaintiff had not demanded equitable relief prior to his motion. The court found Count II of plaintiff's complaint, titled "Request of Equitable Relief," wherein paragraph forty-eight requests "the

[c]ourt do such other equity as is reasonable, appropriate, and just[,]" was a sufficient pleading to support plaintiff's post-trial demand for equitable relief.

In addition, the court rejected the JCPD's argument that plaintiff's entitlement to equitable relief was a jury question. The court relied on Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 314-15, 317 (App. Div. 2012), where we held the resolution of the plaintiff's claims for equitable relief and attorney's fees under the LAD were within the trial court's purview. The court maintained under Stoney, 426 N.J. Super. at 315, it was concluded that "the analysis of adjudicating claims for injunctive relief, under . . . [the] LAD, requires the [c]ourt to employ a balancing of claims of injury and effect on each party of granting or withholding of equitable relief."

After reviewing the documents submitted by the JCPD, the court decided equitable relief was warranted. The court noted that a May 1, 2017 policy issued by the JCPD,[2] four days after we rendered Holmes, substantially addressed issues regarding transgender, intersex, and gender non-conforming individuals

---

[2] The policy became effective on May 30, 2017. The court also stated the City of Jersey City "had also promulgated policies on February 25, 2014, but they were not as broad in scope as the directives of the JCPD" policy issued on May 1, 2017.

such that "[m]ost of the remedies . . . [p]laintiff sought have been remediated by the new directives . . . ."[3] However, the court noted the JCPD had yet to address

---

[3] The court rejected the following enumerated requests in plaintiff's motion:

> (1) That the [c]ourt require the [JCPD] to undertake sensitivity training through licensed diversity consultancy on the subject of transgender awareness;
>
> (2) That the [c]ourt compel electronic and/or written logs be kept by the [JCPD] memorializing attendance of all employee[s] of the department for the initial round of training and for all repeat training for new employees going forward;
>
> . . . .
>
> (4) That the [c]ourt order the [JCPD] to commission changes to its data processing that would allow the correct affirmed gender of an arrestee to be entered into the system notwithstanding the fact that said arrestee might have the opposite gender during one or more prior arrest as reflected in the database;
>
> (5) That the [c]ourt issue an [o]rder compelling the [JCPD] to revise its policies, whether written or virtual, its training materials, its website, and its public mandates to reflect "gender identity or expression" as a category meriting equal protection with all other categories set forth in such policies;
>
> (6) That the [c]ourt issue an [o]rder compelling the [JCPD] to report to the New Jersey Division on Civil Rights, within six months of the [c]ourt's order, with copy to counsel for [p]laintiff, that the [c]ourt's [o]rder

the issue of transgender discrimination training as it was "not specifically outlined in any documents provided to the [c]ourt" and "there is no indication that the training addressing 'unlawful discrimination' in anyway addresses 'transgender discrimination[.]'" At the end of the court's decision it stated, it "will seek further briefing regarding the manner in which these issues can be rectified." However, according to the record provided, the court subsequently neither requested any additional briefing nor indicated why it chose not to.

On November 28, the court issued an order and four-page opinion granting plaintiff's motion for attorneys' fees and costs. The court found plaintiff was a prevailing party under Davidson v. Roselle Park Soccer Fed'n, 304 N.J. Super 352, 356 (Ch. Div. 1997) because the JCPD adopted new policies regarding interactions with transgender persons following Holmes. Relying on Rendine v. Pantzer, 141 N.J. 292, 335 (1995), the court reduced some of the attorneys' billing time it found unreasonable. Based upon the attorneys' experience, reputation, and ability, Singer v. State, 95 N.J. 487, 499 (1984), as well as determining the risk of non-payment in taking the case due to proof problems and the controversial nature of plaintiff's civil rights claim, Rendine 141 N.J. at

---

> to undertake all of the equitable relief ordered by the [c]ourt has been followed.

336, 339,[4] the court ordered a fee enhancement of thirty-five percent. Finding reasonable attorneys' fees of $82,792.50, multiplied by the enhancement making it $111,769.87, plus costs of $3,863.07, the award totaled $115,632.94.

II.

In its appeal, the JCPD initially challenges the trial court's order granting plaintiff's request for equitable relief by requiring the JCPD to conduct annual training for its employees on transgender discrimination. Before addressing the specifics of the JCPD's challenge, we discuss some guiding principles concerning the scope of the court's equitable powers and the manner in which it can apply equity where the LAD has been violated.

The LAD was enacted to eradicate "the cancer of discrimination," Lehman v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993), and allows for a full range of legal and equitable remedies for unlawful discrimination, not only in the workplace but also in a place of public accommodation, L.W. ex rel. L.G., 381 N.J. Super. at 487, 489 (holding a "school district may be required to implement measures to prevent future instances of peer harassment in violation of the LAD"). The better approach "employs a balancing of the competing claims of

[4] The court also recognized plaintiff's prior conviction and his lack of emotional stress related to the incident as likely hurdles in pursuing this action.

injury and the effect on each party of the granting or withholding of the requested equitable remedy." Stoney, 426 N.J. Super. at 315. In the exercise of its equitable powers, the court "may, and frequently do[es], go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Waste Mgmt. of N.J., Inc. v. Union Cty. Utils. Auth., 399 N.J. Super. 508, 520-21 (App. Div. 2008) (citing Yakus v. United States, 321 U.S. 414, 441 (1944)).

When deciding issues of equitable relief, "the court retains wide discretion in fashioning its contents and determining its breadth and scope." Stoney, 426 N.J. Super. at 313; see also In re Resolution of the State Comm'n of Investigation, 108 N.J. 35, 46 (1987) (recognizing equitable remedy is granted within the court's discretion). Consequently, our review of equitable relief is reviewed under an abuse of discretion standard. Stoney, N.J. Super. at 307 (citing Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Castello v. Wohler, 446 N.J. Super. 1, 24, (App. Div. 2016) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). However, where the disputed equitable issue is a question of law, our review is de novo. Regalado

v. Curling, 430 N.J. Super. 342, 345 (App. Div. 2013) (citing Stoney, 426 N.J. Super. at 307).

Applying these principles, we conclude it was within the trial court's authority to order equitable relief because plaintiff's complaint included a demand for equitable relief. Our concern, however, is that after in camera review of the JCPD training documents, the JCPD, as well as plaintiff, was not given a fair opportunity to brief the reasonableness and scope of court-mandated transgender sensitivity training. In fact, the court's October 4, 2018 decision stated additional briefing would be allowed to address the scope of the training, but none was allowed, nor were the parties advised why it was not. Hence, a remand is necessary to enable the JCPD the opportunity to brief, and in conformance with our court rules be heard at oral argument, regarding whether transgender training is required to prevent future instances of transgender harassment in violation of the LAD based upon the record.

Our decision to remand should in no way be viewed as indicating whether imposing training requirements on the JCPD was a proper exercise of the court's equitable powers under the LAD. The JCPD has advised that it already provides certain anti-discrimination training, albeit on a less frequent basis then the court ordered. We leave it to the court, following its consideration of the parties'

respective arguments on remand, to determine the extent of required training, if any. We further leave it to the court's discretion as to whether it should allow the parties to present documentary evidence and testimony not previously presented.

III.

Turning to the court's award of attorneys' fees and costs, the JCPD does not contest the reasonableness of the award's amount, but argues plaintiff was not a "prevailing party" under the LAD to shift fees and costs. The JCPD maintains because plaintiff is not entitled to equitable relief and did not obtain compensatory damages or any other form of affirmative relief, fee shifting is improper.

Under the LAD, counsel fees can be granted to the prevailing party. N.J.S.A. 10:5-27.1. "An award of counsel fees is a decision that generally rests within the discretion of the judge and is thus reviewed for an abuse of that discretion." Van Horn v. Van Horn, 415 N.J. Super. 398, 408 (App. Div. 2010) (citing Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44, (2001)). Our Supreme Court has held that "a plaintiff who is awarded some affirmative relief by way of an enforceable judgment against defendant or other comparable relief through a settlement or consent decree is a prevailing party under . . . the LAD."

Tarr v. Ciasulli, 181 N.J. 70, 87 (2004) (citing N.J.S.A. 10:5-27.1) (adopting the United States Supreme Court's definition of "prevailing party" in Farrar v. Hobby, 506 U.S. 103 (1992)).

A prevailing party is one who "'prevails' when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 86 (quoting Farrar, 506 U.S. at 111-12). To be a prevailing party under the LAD:

> (1) there must be a factual causal nexus between plaintiff's litigation and the relief ultimately achieved; in other words, plaintiff's efforts must be a necessary and important factor in obtaining the relief; and (2) it must be shown that the relief ultimately secured by plaintiffs had a basis in law.
>
> [Mason v. City of Hoboken, 196 N.J. 51, 72-73 (2008).]

We have recognized that "a prevailing party need only be nominally successful." Warrington v. Vill. Supermarket, Inc., 328 N.J. Super. 410, 417 (App. Div. 2000) (applying the catalyst theory to the LAD fee-shifting statute, which justifies an award of attorneys' fees if the lawsuit "prompted defendants to take action to correct the unlawful practice"). Under these principles, we conclude plaintiff was a prevailing party entitled to attorneys' fees and costs under the

LAD. Despite its verdict to not award plaintiff compensatory damages, the jury did determine his rights under the LAD were violated through the hostile environment created by the JCPD in a place of public accommodation. The verdict established plaintiff proved his allegation that he was degraded by police officers of the JCPD due to his transgender experience despite their denial of plaintiff's claims. While plaintiff sought to be compensated for the mistreatment he suffered, the verdict vindicates his accusation, making him at the very least nominally successful. In addition, as the court noted, days after our published decision in Holmes reversed the motion court's summary judgment dismissal, and prior to trial, the JCPD instituted policies and procedures regarding interactions with transgender persons. This was clearly the result of plaintiff's lawsuit. The lawsuit was a catalyst to the JCPD's changes in policy. See State v. Hudson Cty. Register, 422 N.J. Super. 387, 394 (App. Div. 2011) ("A plaintiff may qualify as a prevailing party, and thereby be entitled to a fee award, by taking legal action that provides a 'catalyst' to induce a defendant's compliance with the law."). Hence, shifting fees and costs related to the pre-trial and trial activities of plaintiff's counsel is consistent with the remedial purposes of the LAD.

The court also shifted fees due its decision to grant plaintiff equitable relief in the form of transgender training for all JCPD staff. However, considering we have reversed and remanded that decision for further consideration, the attorneys' fees and costs associated with the equitable relief application should be deducted from the award. The determination of those fees and costs are subject to the court's ultimate decision on equitable relief following remand.

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION