**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1464-23

TOWNSHIP OF MORRIS,

 Plaintiff-Respondent,

v.

BOROUGH OF MORRIS PLAINS,

 Defendant-Appellant,

and

169 JOHNSON ROAD, LLC,

 Defendant.

_____

> Argued October 29, 2024 – Decided November 15, 2024
>
> Before Judges Chase and Vanek.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1589-22.
>
> John E. Horan argued the cause for appellant (Horan & Aronowitz, LLP, attorneys; John E. Horan, on the briefs).

Michael A. Sabony argued the cause for respondent (Antonelli Kantor Rivera, PC, attorneys; Jarrid H. Kantor, of counsel and on the brief; Gregory D. Emond and Michael A. Sabony, on the brief).

PER CURIAM

The Borough of Morris Plains ("Borough") appeals from a Law Division order dated December 8, 2023, granting the Township of Morris's ("Township") motion for summary judgment in this contract dispute over sewer connection fees. We affirm substantially for the reasons expressed by Judge Franzblau in his cogent statement of reasons.

I.

In 1971 the Borough and Township entered into an agreement (the "1971 Agreement") in which sewage from the Borough would flow to the Township and the Township would provide metered bulk sewage treatment at its treatment facilities. As part of this agreement, the Borough was to "construct and commence operations of a system of mains for the collection of sewage within the Borough." In 1973, the parties entered into a subsequent agreement (the "1973 Agreement") to allow the Borough to connect to the Township's system earlier than contemplated in the 1971 Agreement. The 1973 Agreement provided that the Township would receive a fee for houses within the Borough being connected into the system.

A-1464-23

The Borough, Township of Parsippany-Troy Hills ("Parsippany"), and the property owner entered into an agreement concerning use of the Borough's sanitary sewerage system to carry waste from an office building located on Route 10 and Johnson Road in Parsippany in November 1973 (the "November 1973 Agreement"). The November 1973 Agreement explicitly stated it was contingent upon the approval of the Township. However, despite the Township never approving the November 1973 Agreement, the parties elected to operate under its terms, and sewage from the property was transmitted to and treated by the Township. When the Township found out about the agreement it objected.

In 1981, the Township, the Borough, Parsippany Associates, and Trustees of the General Electric Pension Trust entered into two agreements regarding property located in Parsippany. The first agreement (the "First 1981 Agreement"), required payment to the Township of "sewer service charges as set forth in and required by the ordinances of the Township." The second agreement (the "Second 1981 Agreement"), required payment of "a sanitary sewer fee to [the Township] for the office building complex." Further, the Second 1981 Agreement superseded the November 1973 Agreement in its entirety. At the end of 1981, a third agreement was entered into between the Township, the Borough, and Travelers Insurance Company (the "1981 Johnson

Road Agreement") regarding property located in Parsippany. Pursuant to this 1981 Johnson Road Agreement, the property owner agreed to pay a sanitary sewer service fee directly to the Township.

The Borough and Parsippany entered into an agreement in 1983 (the "1983 Johnson Road Agreement"). Pursuant to the 1983 Johnson Road Agreement, seven residential units located on Johnson Road in Parsippany connected to the Borough's sewage system which was ultimately treated by the Township. In 1984, the Township and Borough executed an agreement concerning properties located on Johnson Road in Parsippany (the "1984 Johnson Road Agreement"). Pursuant to the 1984 Johnson Road Agreement, the Borough expressly agreed to remit to the Township the sewer connection fee for five of the residential units provided for in the earlier 1983 Johnson Road Agreement, an agreement which did not include the Township. Further, in the 1984 Johnson Road Agreement, the Borough explicitly agreed to pay a connection fee to the Township for any new connection along Johnson Road. In 1988, the Borough paid a connection fee to the Township when the Township approved the sewer connection for Johnson Plaza.

The Borough and Township entered into yet another agreement for "Bulk Sewer Treatment Services" in 1999 (the "1999 Agreement"). Under the 1999

A-1464-23

Agreement, the Township agreed to continue supplying bulk sewage treatment services for the Borough. Section 6.1 of the 1999 Agreement provides "Connection Fees-The Borough shall have the right to impose and receive connection fees as permitted by law to any user of said services in the Borough and may retain all said amount received without claim from the Township." Additionally, Section 6.5 of the 1999 Agreement provides in relevant part:

> Out of town buildings – The parties acknowledge that some users are located outside of the Borough for which sewerage is transmitted through mains and lines through the Borough to the Township Treatment Plant. The Township agrees that it will bill said commercial users directly and further acknowledges that the Borough may reserve the right to impose an additional fee upon such user, for the use of the Borough pipes and other property by said user, which fee shall be billed to the user by the Borough.

Several years later, in 2017, the Township and Parsippany were parties to litigation in response to an emergent situation involving sewerage issues. The litigation resolved and the settlement agreement provided that connection fees from Parsippany would be paid to the Township. The Borough was not a party to the litigation.

Thereafter, in 2021, Bowman Consulting Group, Ltd. ("Bowman"), on behalf of a developer, applied for authorization to connect into the existing sanitary sewer system in anticipation of the construction of an eighty-seven-unit

5

residential development at 169 Johnson Road (the "Subject Property"). Bowman requested the Township approve a Treatment Works Authorization Endorsement ("TWA"), as the sewage flow from the Subject Property would ultimately be conveyed, through the Borough, to the sewage plant owned and operated by the Township.

The Township sent a formal demand to Bowman requesting payment of the connection fee. On March 11, 2022, the Borough responded to the demand and contested the Township's claim to the connection fee. As the Borough had already collected some of the fees, an escrow agreement was entered into by and between the Township, the Borough, Bowman, and an escrow agent. Pursuant to Section 2 of the escrow agreement, the Township formally demanded that both the Borough and the developer provide written instructions to the escrow agent for the immediate release of the escrowed funds to the Township. After the Borough failed to respond to the demand, the Township commenced the instant action by filing a complaint.

After discovery ended, the parties filed cross motions for summary judgment. The Borough claimed according to Section 6.1 of the 1999 Agreement they were entitled to the connection fees. The Township claimed that pursuant to Section 6.5 of the 1999 Agreement and the prior Agreements,

6

they were entitled to the connection fees. In a cogent, well-reasoned opinion, Judge Franzblau determined that the Township was entitled to the connection fees, thus granting their motion for summary judgment and denying the Borough's motion for summary judgment.

In the court's written statement of reasons supporting the summary judgment orders, it noted that the Township's complaint asserted claims for breach of contract, unjust enrichment, and conversion. The court found that the terms of the 1999 Agreement were clear and unambiguous and when read in conjunction with Sections 6.1 and 6.5, entitled the Township "to all connection fees for users outside the Borough for which sewage is transmitted through mains and lines through the Borough to the Township Treatment Plant." The court found "it was of no moment" that Section 6.5 did not mention the term "connection fees." The court further determined that Section 6.1 allowed the Borough to impose and collect connection fees for users within, not outside, the Borough. Although both parties contended that the 1999 Agreement was unambiguous, the court noted that its interpretation of the 1999 Agreement was "consistent with the parties' prior course of dealing in which the Township is entitled to connection fees for properties outside the Borough." Moreover, the court reasoned that there was no evidence within the 1999 Agreement that the

parties intended to change their course of dealings or change the 1984 Johnson Road Agreement which also provided for the Township to receive connection fees for properties along Johnson Road. Lastly, the trial court granted summary judgment as to the Township's claims for unjust enrichment and conversion.[1]

This appeal by the Borough follows in which they argue that based on the language of the contracts, summary judgment should have been granted in their favor.

## II.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Thus, we consider, as the motion judge did, "whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational

---

[1] The Borough has not challenged summary judgment on those two counts. New Jersey law is well-settled, "[a]n issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 R. 2:6-2 (2024) ("It is, of course, clear that an issue not briefed is deemed waived."); State v. Amboy Nat. Bank, 447 N.J. Super. 142, 148 n.1 (App. Div. 2016) (issue addressed for first time in reply brief deemed waived); 539 Absecon Boulevard, L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (noting claims not briefed are deemed abandoned).

factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 602-03 (App. Div. 2017) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

III.

With those principles in mind, we turn to the Borough's argument that the trial court committed legal error in its interpretation of the agreements, and that it is entitled to all connection fees for properties outside its boundaries. We discern no error in the determinations made by Judge Franzblau and affirm essentially for the rationale in his statement of reasons. We add the following comments.

The trial court was presented with a strictly legal issue: the interpretation of a contract. The construction of a written contract is almost always a legal question for the court, suitable for disposition on summary judgment, unless there is ambiguity or the need for parol evidence to aid in interpretation.

Driscoll Constr. Co. v. State Dep't of Transp., 371 N.J. Super. 304, 313-14 (App. Div. 2004). The court's aim is to determine the intentions of the parties to the contract, as revealed by the language used, the relations of the parties, the attendant circumstances, and the objects the parties were trying to attain. Id. at 313. "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)). Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract. Dontzin v. Myer, 301 N.J. Super. 501, 507 (App. Div. 1997). The law is well-settled, "it is the function of a court to enforce it as written and not to make a better contract for either of the parties." Kampf, 33 N.J. at 43 (1960).

Here, a plain reading of the 1999 Agreement gives the Borough the right to impose and receive connection fees as permitted by law to any user of said services in the Borough. The plain language of the 1999 Agreement does not give the Borough the right to collect fees for connections outside the Borough. Given the Subject Property is not located in the Borough, the Borough's reliance on Section 6.1 of the 1999 Agreement is misplaced and does not provide for payment of the connection fee to them.

Although the Borough claims the 1999 Agreement supersedes the 1984 Johnson Road Agreement, nothing in the record suggests that parties intended the 1999 Agreement to amend, change, or replace the 1984 Johnson Road Agreement. If the agreements were inconsistent, a subsequent contract would supersede a prior inconsistent contract to the extent of the inconsistences. Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459, 463-64 (Ch. Div. 1953). Given that the Borough is only entitled to fees from properties within the Borough under the plain language of the 1999 Agreement, we discern no inconsistency with the 1984 Johnson Road Agreement, which dealt with property, like the Subject Property, that was outside the Borough. The 1984 Johnson Road Agreement explicitly provided any new connection along Johnson Road required a connection fee to be paid to the Township, not the Borough.

To the extent the parties argue different readings of the entire 1999 Agreement, "[e]vidence of the circumstances is always admissible in the aid of the interpretation of an integrated agreement, even where the contract is free from ambiguity, not for the purpose of changing the writing, but to secure light by which its actual significance is measured." Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 427 (1953); see Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1956). The circumstances

11

here, and in all agreements, are in accordance with the parties' course of action in connection fees from properties on Johnson Road in Parsippany being paid to the Township.

To the extent we have not otherwise addressed the Borough's other arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1464-23