NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1634-15T3

SHAKEEM MALIK HOLMES,

    Plaintiff-Appellant,

v.

JERSEY CITY POLICE DEPARTMENT,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 27, 2017**
>
> **APPELLATE DIVISION**

Submitted April 4, 2017 — Decided April 27, 2017

Before Judges Reisner, Koblitz and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-696-14.

Costello & Mains, attorneys for appellant (Deborah L. Mains, on the brief).

Jeremy Farrell, Corporation Counsel, Jersey City Law Department, attorney for respondent (Stevie D. Chambers, Assistant Corporation Counsel, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Plaintiff Shakeem Malik Holmes appeals from a November 16, 2015 order granting summary judgment, dismissing his complaint of public accommodation discrimination in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Plaintiff

alleged that, after arresting him for shoplifting and transporting him to the police station, several police officers subjected him to hostile treatment because of his transgender status.[1]  See N.J.S.A. 10:5-4, -12(f)(1) (prohibiting discrimination in places of public accommodation, based on gender identity or expression); N.J.S.A. 10:5-5(rr) (defining gender identity or expression).  For the reasons that follow, we reverse the order on appeal, and remand this matter for trial.

We begin by defining the issues that are and are not presented on this appeal.  In Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 348 (App. Div.), certif. denied, 182 N.J. 147 (2004), this court held that a police station is a place of public accommodation under the LAD, and on this appeal, both sides accept that interpretation of the LAD.[2]  Hence, we are not called upon to address that issue.  On this appeal, plaintiff has waived any claims concerning his placement in a female-only jail cell or his having been categorized as female for security purposes within the

[1] According to plaintiff's attorney, the shoplifting charges were later dismissed.

[2] Ptaszynski has been cited with approval by the Supreme Court for its language concerning the broad construction to be given the LAD, but the Court has not addressed the substantive issue concerning the LAD status of a police station.  See Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 115 (2010); L.W. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381, 400 (2007).

jail facilities.  As a result, those issues are not before us, and they may not be reasserted on remand.

On this appeal, plaintiff solely pursues a "hostile environment" claim based on his assertion that police officers made demeaning, insulting and threatening comments about his transgender status.  Specifically, he alleges that several officers referred to plaintiff as "it," referred to plaintiff's situation as "bullshit," and stated "so that's a fucking girl?" He also asserts that one of the officers threatened to put his fist down plaintiff's throat "like a fucking man."  Primarily relying on Heitzman v. Monmouth County, 321 N.J. Super. 133 (App. Div. 1999), the trial judge concluded that rude and insensitive comments "[did] not rise to the level of severe or [pervasive] LAD violations."

We review the trial court's grant of summary judgment de novo, employing the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)); Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003).  Like the trial court, we consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the

non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995).

In this case, the inquiry is whether plaintiff's allegations, if true, could support a hostile environment claim under the LAD. We find that they could, and that plaintiff is therefore entitled to present his claim to a jury. In reaching that conclusion, we consider that plaintiff, as an arrestee temporarily incarcerated in the police station, was in a uniquely vulnerable position; that the individuals making the hostile comments were police officers, who wield tremendous power over arrestees; and that the comments included a physical threat. Under all the circumstances, a jury could find that the conduct was sufficiently severe that a reasonable transgender person in plaintiff's position would find the environment to be hostile, threatening and demeaning. See Lehmann v. Toys 'R' US, 132 N.J. 587, 453-54 (1993).

The motion judge's reliance on Heitzman, which defendant repeats on this appeal, was misplaced. Heitzman applied a higher proof standard to LAD cases that involved religious, as opposed to racial, harassment, and the motion judge appears to have applied that higher standard to transgender harassment. However, Heitzman was overruled, in pertinent part, by Cutler v. Dorn, 196 N.J. 419 (2008), where the Court unequivocally rejected the higher proof standard. Id. at 440. "If the holding in Heitzman is perceived,

in application, to suggest a different, and higher, threshold for demonstrating a hostile work environment when religion-based harassment is claimed, then that misapprehension must end."  Ibid. Moreover, even Heitzman recognized that "physically threatening or humiliating" remarks directed at a victim could create a hostile environment.  Heitzman, supra, 321 N.J. Super. at 147 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295, 302-03 (1993)).

Further, as we have recognized, "[t]he prohibition of discrimination in relation to public accommodation is functionally distinct from the ban on employment discrimination."  Thomas v. Cty. of Camden, 386 N.J. Super. 582, 590 (App. Div. 2006) (quoting Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 67 (1978)).  We have also recognized that, in the context of public accommodation discrimination, hostile comments that might not suffice to create a hostile environment in a work context may nonetheless violate the LAD.  See Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 215 (App Div.), certif. denied, 166 N.J. 606 (2000).

> We regard it to have been error for the trial court, in a public accommodations case, to make overgeneralized use of specific principles and approaches developed to determine liability in employment discrimination cases. Public accommodations cases do not involve ongoing organizational connections or the need to make allowances for other special features of the employer-

> employee relationship, such as its hierarchical qualities. By the very nature of the day-to-day personal involvements which characterize the employment situation, a hostile working environment is a very special problem; it has less in common than the terms seem to convey with insulting or humiliating words or conduct designed to discourage a potential patron's use of a public accommodation.
>
> [Ibid.]

In Franek, proof of one discriminatory comment by the owner of a recreation facility, that he did not want "those [disabled] people" to use the premises, was sufficient to allow the plaintiff to survive a summary judgment motion. Id. at 211. Likewise, in Turner v. Wong, proof that on one occasion, the proprietor of a donut shop directed racist remarks to a customer was sufficient to establish a prima facie case of public accommodation discrimination. Turner, supra, 363 N.J. Super. at 197-98.

Defendant's reliance on L.W., supra, is misplaced. In L.W., the harassment was directed at the plaintiff, a public school student, by his classmates, rather than by teachers or other authority figures. In that context, the Court recognized "a cause of action against school districts for failing to reasonably address peer-based, affectional orientation harassment[.]" L.W., supra, 189 N.J. at 402. However, the Court also recognized that school children will inevitably engage in teasing and other

inappropriate behavior, due to their immaturity, and not every instance of wrongful conduct will support a LAD cause of action. Id. at 408-09.

> We do not suggest, however, that isolated schoolyard insults or classroom taunts are actionable. Rather, in the educational context, to state a claim under the LAD, an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct. See Lehmann, supra, 132 N.J. at 603-04 (enumerating standard for actionable hostile work environment sexual harassment).
>
> [Id. at 402-03.]

This case presents an entirely different context from L.W. Here, the comments were not made by school children, or by plaintiff's peers. They were made by police officers, in a position of authority over plaintiff, who was their prisoner. In those circumstances, the impact of threatening and harassing conduct may be magnified, even if it only occurs on one day. Moreover, while a certain amount of strong language may be expected in the confines of a police department, defendant has not suggested that its personnel have any operational need to threaten, demean or humiliate prisoners on the basis of their gender affiliation

or membership in any other protected class.  In fact, such conduct may encourage other prisoners to attack the harassment victim, thus undermining the orderly operation of the police lock-up as well as the safety of the transgender prisoner.[3]

Under the factual circumstances of this case, we conclude that summary judgment should not have been granted on the one claim plaintiff has pursued on this appeal.  Accordingly, we reverse and remand for trial on that claim.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] During his deposition, plaintiff testified that he was afraid for his physical safety from other prisoners; hence, he sought to avoid discussing his transgender status in front of the other prisoners in the male-only cell where he was first confined. Plaintiff's female companion, who was arrested at the same time, testified that based on the officers' hostile reaction to plaintiff's transgender status, she was also afraid for his physical safety.

A-1634-15T3