**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3414-16T4

WILLIAM SHARP,

    Plaintiff-Appellant,

v.

NORTH HUDSON REGIONAL
FIRE & RESCUE, DIRECTOR
MICHAEL DEORIO and DIRECTOR
JEFF WELZ,

    Defendants-Respondents.

_____

Argued on May 20, 2019 – Decided July 30, 2019

Before Judges Haas, Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1443-15.

Wolodymyr P. Tyshchenko argued the cause for appellant (Caurso Smith Picini PC, attorneys; Louis A. Zayas and Cody Bonk, on the briefs).

Eric Labes Harrison argued the cause for respondents North Hudson Fire & Rescue, Michael DeOrio, and Jeff Welz (Methfessel & Werbel, attorneys; Brent Robert

Pohlman, of counsel; Raina Marie Johnson, on the briefs).

Michael Archangel D'Anton, Sr. argued the cause for respondent Michael DeOrio (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Michael Archangel D'Anton, Sr., of counsel and on the briefs).

David F. Corrigan argued the cause for respondent Jeff Welz (David F. Corrigan LLC, attorneys; David F. Corrigan, of counsel and on the brief).

PER CURIAM

Plaintiff William Sharp appeals from a Law Division order granting summary judgment to defendants North Hudson Regional Fire & Rescue (North Hudson), and Co-Executive Directors Michael DeOrio and Jeff Welz, dismissing with prejudice his complaint alleging violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. Sharp contended his rights were violated when he was forced to take involuntary disability retirement from his firefighter position with North Hudson due to his injured knee. On appeal, he contends summary judgment should not have been granted because there were issues of material facts and discovery was incomplete. In light of the competent evidence in the record and the prevailing legal principles, we affirm

substantially for the reasons set forth by Judge Joseph V. Isabella in his cogent written statement of reasons.

## I.

We summarize the following facts from the record, viewing "the facts in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)).

Sharp's Work-Related Injury and Its Effects

After being employed as an active-duty firefighter with North Hudson for eighteen months, Sharp tore the meniscus in his left knee after he slipped off a firetruck on May 30, 2009. Surgery followed, causing him to remain out of work until September. He was then placed on modified duty – performing clerical duties at North Hudson's headquarters – per North Hudson's policy. He took another leave from work after having microfracture surgery in May 2010. In August 2010, he underwent a functional capacity evaluation (FCE), which determined that he was not fit for, or capable of, engaging in firefighting activities. When Sharp returned to work from his second long-term leave of absence in September 2010, he was again placed on modified duty.

In October 2011, another FCE determined Sharp was fit for active firefighting duty. However, before returning to active duty, he sought a second

opinion from another doctor to determine if his knee was fit. The doctor concluded that he was unable to perform the duties of a firefighter; specifically, not being able to lift any object in excess of seventy-five pounds, climb a ladder, or crawl.

In August 2012, North Hudson Fire Chief Frank Montague asked Sharp if he could obtain political help for himself.[1] Additionally, DeOrio explained how Sharp could be declared fit for active duty so that he could return to his firefighting position, or remain on modified duty until he had enough time to be eligible for a pension.[2] A union representative told Sharp he was being kept on modified duty long enough so that he would be eligible for a pension. Although North Hudson permitted Sharp to remain on modified duty for approximately four years, its policy only permits employees to remain on modified duty for up to one year.

In February 2013, an orthopedic specialist recommended that Sharp undergo knee replacement surgery; however he elected not to undergo the procedure. Sharp believed it would be highly unlikely that he would ever be

---

[1] Sharp recorded the conversation without Montague's consent.

[2] DeOrio could not remember whether he held the conversation with Sharp or the union.

A-3414-16T4

able to resume full firefighting activities even if he underwent knee replacement surgery.

Based upon the recommendations of its co-executive directors, North Hudson's management committee passed a resolution on March 25, 2013, authorizing the submission of an involuntary disability retirement application for Sharp with the Police and Firemen's Retirement System (PFRS). Sharp was subsequently placed on a leave of absence without pay effective May 1. In the ensuing evaluation to determine his eligibility for disability retirement, Dr. Richard Rosa opined that Sharp was totally and permanently disabled concerning his duties as a firefighter. Although the record is not clear, based on the ensuing litigation, it would appear that the application was granted by the PFRS.

Civil Litigation

On March 24, 2015, Sharp filed a complaint alleging claims of unlawful discrimination under the LAD, by not granting him reasonable accommodation for his knee injury, and civil rights violations under the NJCRA by refusing to accommodate him due to his lack of political affiliation and retaliating against him for engaging in protected activities – filing complaints, refusing to sign

5

waivers on the date of his termination, and considering filing a disability claims lawsuit.

During discovery, Sharp noticed the deposition of Weehawken Mayor Richard Turner, a member of the North Hudson management committee. Defendants unilaterally adjourned the deposition, followed by DeOrio's motion for a protective order to prevent the taking of Mayor Turner's deposition, claiming: no new information would result; the deposition was intended to harass and coerce a settlement; he is a high-ranking government official invoking the deliberative process privilege; and he lacked personal knowledge of Sharp's termination. Judge Isabella granted the motion because there were less intrusive and burdensome ways to acquire the information Sharp sought – assessing the credibility of the North Hudson management committee as to their motive behind involuntarily retiring him – such as deposing one of the other four commissioners.

While the protective order motion was pending, defendants filed summary judgment motions to dismiss Sharp's complaint and all cross-claims on the basis that he could not establish claims under the NJCRA and LAD because: his termination stemmed entirely from his inability to perform essential functions of his job; no information was provided showing that he engaged in any

protected activity connected to defendants' submission of an application for involuntary disability retirement benefits; and he is not entitled to punitive damages. Sharp opposed the motions. Judge Isabella heard counsel's arguments and granted the motions in their entirety, dismissing Sharps' complaint with prejudice. In his statement of reasons, Judge Isabella determined "[d]efendants have not discriminated against [Sharp] in anyway and there is no political affiliation or lack thereof that has prevented [Sharp] from remaining on light modified duty for a period longer than allowed." The judge cited Potente v. County of Hudson, 187 N.J. 103, 110-11 (2006) (quoting N.J.A.C. 13:13-2.8(a)), which provided, "an employer is not required to take actions 'where it can reasonably be determined than an . . . employee, as a result of the individual's disability, cannot perform the essential function of the job even with reasonable accommodation.'" Thus, the judge reasoned, "[w]hen [Sharp] was presented with the option to undergo a medical procedure that would lead to a likelihood he could return to work, [he] refused. As such, [d]efendants were left with no option but to file for an involuntary disability retirement for [him]." This appeal followed.

II.

We are guided by the well-known principle that we review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Thus, we consider, as the motion judge did, "'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 602-03 (App. Div. 2017) (citation omitted). If there is no genuine issue of material fact, we must then "'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying these standards, we discern no reason to disturb Judge Isabella's order.

A.

We first address Sharp's contentions that the judge erred in granting summary judgment because there were material facts in dispute regarding

8

whether defendants could have offered him another position to reasonably accommodate his disability, rather than force his disability retirement. He argues there were sufficient facts in the record for a jury to conclude such a position was available. Sharp claims there are numerous instances in the record that reflect DeOrio's recommendations to terminate his employment. He asserts that defendants treated him disparately compared to other similarly situated employees by refusing to accommodate his severe workplace injury and recommending his involuntary retirement, while treating other politically-connected employees more favorably. He also contends that summary judgment should not have been granted as there was incomplete discovery because he was prohibited from taking Mayor Turner's deposition.

Having considered Sharp's contentions in light of the governing principles, we conclude that his arguments are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). We therefore affirm substantially for the reasons stated by Judge Isabella. We add the following comments.

LAD Claims

To establish a LAD prima facie case of failure to accommodate, a plaintiff must demonstrate:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.
>
> [Victor v. State, 203 N.J. 383, 415 (2010) (internal quotation marks omitted) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317-18 (3d Cir. 1999)).]

An employee need not place a request for a reasonable accommodation in writing, or even use the phrase "reasonable accommodation." Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 400 (App. Div. 2002). However, the employee must make clear that assistance is desired. Ibid. Once such a request is made, "the employer must initiate an informal interactive process with the employee[,]" to identify possible reasonable accommodations that could be implemented "to overcome the employee's precise limitations resulting from the disability." Ibid. The employer must make a "reasonable effort to determine the appropriate accommodations." Ibid.

Defendants clearly satisfied these requirements. Sharp was accommodated with modified duty for four years, which was well beyond the one-year time period set forth in North Hudson's policy. Yet, he asserts defendants, specifically identifying DeOrio as the person making the

recommendation to North Hudson to submit an application for his involuntary disability retirement, terminated his employment because of his disability. To the contrary, North Hudson did not terminate Sharp. Sharp refused to go through with a knee replacement procedure that North Hudson suggested, and would have given him the opportunity to return to full active duty. Thus, North Hudson was left with no other recourse but to pursue involuntary disability retirement because Sharp was no longer able to perform his duties as a firefighter. Consequently, we see no basis for a reasonable jury to conclude that Sharp was terminated because of his disability in violation of the LAD.

NJCRA Claim

The NJCRA in pertinent part states that:

> Any person who has been deprived of . . . any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c) (emphasis added).]

Thus, the NJCRA provides a cause of action to any person who has been deprived of any rights under either the federal or state constitutions by a

11

"person" acting under color of law.  N.J.S.A. 10:6-2(c).  The NJCRA, modeled after the Federal Civil Rights Act, 42 U.S.C. § 1983, affords "a remedy for the violation of substantive rights found in our State Constitution and laws."  Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015) (quoting Tumpson v. Farina, 218 N.J. 450, 474 (2014)).

Sharp asserts he satisfied the three-part test for establishing that he was terminated due to political affiliation, prohibited by the First Amendment, by showing that: (1) he was a public employee "in a position that does not require political affiliation"; (2) he "engaged in constitutionally protected conduct"; and (3) his "conduct was a substantial or motivating factor in the government's employment decision[]" to seek his termination through.  Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997).  In support, he cites Chief Montague's suggestion that he reach out to political connections to help him maintain his employment, and alleged evidence that other injured firefighters, who were politically connected, remained on modified duty until they voluntarily retired.

Sharp's NJCRA claim was appropriately dismissed.  He presented no evidence in discovery indicating that he engaged in any protected conduct.  Taking Chief Montague's statement at face value, it suggested to Sharp that unless he had a "political" godfather, there was nothing that could be done to

12

keep him employed because he was not physically fit to perform his firefighter position and he had served on modified duty much longer than North Hudson's policy allowed. In fact, Sharp admitted to being politically affiliated with individuals that were supportive of the political party in control of North Hudson at the time the application for his involuntary disability retirement was approved. As for his claim that he was disparately treated compared to other similarly situated firefighters, Sharp failed to identify any similarly situated disabled firefighter who was treated more favorably than he was due to political connections. Based upon the record, it is clear that Sharp was relieved of his duties because he was not physically fit as evidenced by medical reports and the FCEs, not because North Hudson terminated him.

<u>Alleged Incomplete Discovery</u>

Sharp asserts that because he was not allowed to take the deposition of Mayor Turner, discovery was incomplete, and therefore a bar to granting defendants' summary judgment. Although <u>Rule</u> 4:46-1 permits a party to file a motion for summary judgment before the close of discovery, "[g]enerally, summary judgment is inappropriate prior to the completion of discovery." <u>Wellington v. Estate of Wellington</u>, 359 N.J. Super. 484, 496 (App. Div. 2003) (citing <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 N.J. 189, 193 (1988)). A party

13

opposing a motion for summary judgment on the grounds that discovery is incomplete, however, must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington, 359 N.J. Super. at 496). The party must identify the specific discovery that it maintains is still needed. See Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007) ("A party opposing summary judgment on the ground that more discovery is needed must specify what further discovery is required, rather than simply asserting a generic contention that discovery is incomplete."). "[D]iscovery need not be undertaken or completed if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004) (citations omitted).

Sharp, however, fails to specify with sufficient particularity how the deposition of Mayor Turner would change the outcome of this case. Moreover, he did not appeal Judge Isabella's protective order. Based on our conclusion above that summary judgment was proper because Sharp did not have viable LAD or NJCRA claims, we fail to discern how additional discovery would alter our thinking.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3414-16T4