**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0034-19

YANLEY SANDY,

    Plaintiff-Appellant,

v.

TOWNSHIP OF ORANGE,
L. WORTHEN-BARNES, and
IMBERT WALKER,

    Defendants-Respondents.

_____

Submitted February 24, 2021 – Decided July 29, 2021

Before Judges Ostrer, Vernoia, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2274-17.

Eldridge Hawkins, attorney for appellant.

Michael A. Armstrong & Associates, LLC, attorneys for respondent Township of Orange (Morrison Kent Fairbairn, on the brief).

David C. Stanziale, attorney for respondent L. Worthen-Barnes.

PER CURIAM

Plaintiff Yanley Sandy appeals from August 30, 2019 orders granting summary judgment to defendant Township of Orange (the Township) and Township police officer, defendant L. Worthen-Barnes, and denying plaintiff's cross-motion for summary judgment. Based on our de novo review of the summary judgment record, and after consideration of the arguments of counsel, we affirm the court's order granting defendants summary judgment on all counts of the complaint other than the eighth count, which alleges the Township and Worthen-Barnes violated the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, by unlawfully discriminating against plaintiff in a place of public accommodation based on his national origin. We vacate the summary judgment award on the eighth count and remand for further proceedings before the trial court on that count. We affirm the court's denial of plaintiff's cross-motion for summary judgment.

I.

To provide context for our discussion of the issues presented by plaintiff's appeal from the orders granting defendants' summary judgment motions, we generally describe the facts, supported by the parties' Rule 4:46-2 statements, in

2

the light most favorable to plaintiff, the non-moving party.[1]  See Bauer v.

Nesbitt, 198 N.J. 601, 604 n.1 (2009) (explaining in the consideration of a

---

[1]  Many of the facts we include in the summary are set forth in the parties' respective Rule 4:46-2 statements of material fact.  We do not refer to purported facts included in the statements that are not supported by citation to competent evidence.  See R. 4:46-2(a) to (b); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (explaining that in reviewing a trial court's summary judgment order, we "must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact"); Leang v. Jersey City Bd. of Educ., 399 N.J. Super. 329, 357 (App. Div. 2008) (requiring that in determining whether to "accept as true . . . the allegations [contained in] a party's statement [of material facts]," courts must "consider[] . . . 'the competent evidential materials'" present in the record (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995))), aff'd in part, rev'd in part on other grounds, 198 N.J. 557 (2009); Lombardi v. Masso, 207 N.J. 517, 547 (2011) (Rivera-Soto, J., dissenting) ("Facts tendered as material either in support or in opposition to a motion for summary judgment motion must be anchored to a proper basis.").  For example, we do not include in our summary those purported facts set forth in the Township's Rule 4:46-2 statement that are supported only by a citation to a hearsay police report annexed to a certification of counsel and which are otherwise untethered to an affidavit or certification supported by the personal knowledge of any police officers.  See R. 1:4-4; R. 1:6-6.  We include some facts plaintiff putatively denied because plaintiff's failure to support his denials with citations to competent record evidence renders the asserted facts admitted for purposes of our consideration of defendants' summary judgment motions.  See R. 4:46-2(a) to (b); see also Kamienski v. State, 451 N.J. Super. 499, 505 n.2 (App. Div. 2017) (providing that a party's assertions or denials "of material fact[s]" must be "support[ed]" by "citation[s] to the portion of the motion record" upon which the party relied in support of the assertions or denials (quoting R. 4:46-2(a))); Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) ("[B]are conclusory assertions in an answering affidavit are insufficient to defeat a meritorious application for summary judgment.").

A-0034-19

summary judgment motion "both trial and appellate courts must view the facts in the light most favorable to the non-moving party").

Plaintiff is "Guyanese by national origin" and he became an American citizen in 2006. In the early morning hours of April 12, 2015, plaintiff drove his car on Scotland Road in the Township. Scotland Road is a two-lane street leading to its intersection with Central Avenue, and, at the intersection, the street has a third lane, which is for vehicles making a left turn onto Central Avenue. Plaintiff intended to make a right turn onto Central Avenue but as he approached the intersection of Scotland Road and Central Avenue, he saw a police car stopped in the right lane of Scotland Road and another vehicle stopped in the center lane. Worthen-Barnes, who was on duty as a Township police officer, stood outside the police car.

Plaintiff stopped his vehicle about two car lengths behind the police car. At that time, plaintiff activated his vehicle's right turn signals. Plaintiff's vehicle remained stopped behind the police car for two to three cycles of the traffic signal light changing at the intersection. Worthen-Barnes looked in plaintiff's direction at one point but did not say anything to him.

Plaintiff then activated his car's left turn signals and drove to his left around the stopped police car and the other vehicle and up to the intersection in

A-0034-19

the left-turn lane. When the traffic light at the intersection turned green, plaintiff activated the car's right turn signals and made a right turn onto Central Avenue from the left-turn lane on Scotland Road.

After plaintiff made the turn onto Central Avenue, and as he passed the vehicle and police car still stopped to his right on Scotland Road, he heard Worthen-Barnes yelling at him as she approached the rear of his car. Plaintiff stopped his car and leaned over to lower the rear passenger-side window to hear what Worthen-Barnes was saying to him, but he did not lower the music playing on his radio. After he lowered the window, he heard Worthen-Barnes say "back-up, back-up." Plaintiff did not back up his vehicle. He did not move or say anything to Worthen-Barnes as she stood toward the rear of his car holding what he believed was a radio in one hand and a gun in the other. Worthen-Barnes pointed a gun at plaintiff as he sat in his car, but she did not give him any commands.

Two male officers then opened the driver's-side door of plaintiff's car and pulled him from the vehicle while cursing at him. Worthen-Barnes then opened the front passenger-side door of the car and took the keys from the ignition.

As the male officers pulled plaintiff from his car, "they slammed him against his vehicle and put handcuffs on him while cursing at him." They also

5 A-0034-19

searched his pockets, causing his pants to fall "halfway 'down to the back of [his] butt[ocks]' as a result."

The officers placed plaintiff in a police vehicle with Worthen-Barnes, who drove plaintiff to the police station. According to plaintiff, while driving to the station, Worthen-Barnes "glanced back at [p]laintiff" and said, "[W]e do this to you because you're a [expletive] foreigner." Plaintiff asked Worthen-Barnes why she made the statement, and she responded, "[S]hut the [expletive] up you [expletive] foreigner."

When plaintiff arrived at the station, Worthen-Barnes and another officer placed him in what plaintiff described as a "mesh cage." He remained in police custody for two to three hours. Worthen-Barnes charged plaintiff with disorderly conduct in violation of N.J.S.A. 2C:33-2(a)(1), and three motor vehicle offenses.[2] The municipal court later dismissed the charges for lack of prosecution.

---

[2] Plaintiff was issued motor vehicle summonses for disregarding an officer's signal by police whistle, N.J.S.A. 39:4-122; careless driving, N.J.S.A. 39:4-97; and improper passing, N.J.S.A. 39:4-83.

Plaintiff subsequently filed a complaint against the Township, Worthen-Barnes, and Township Police Sergeant Imbert Walker.[3] The complaint asserted the following ten causes of action: negligent training and supervision of Worthen-Barnes and Walker (first count); reckless and intentional infliction of emotional distress (second count); violation of plaintiff's constitutional and civil rights and violation of N.J.S.A. 10:6-2 (third count); unlawful stop, search, and arrest in violation of Article I, Paragraphs 1, 5, and 7 of the New Jersey Constitution (fourth count); false arrest and false imprisonment (fifth count); violation of the New Jersey Constitution (sixth count); infliction of emotional distress (seventh count); violation of N.J.S.A. 10:5-4 and -12(f) by denying plaintiff equal treatment in a place of public accommodation (eighth count); malicious prosecution (ninth count); and violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (tenth count).

---

[3] Plaintiff filed a complaint and, later, an amended complaint. We describe the causes of action asserted in the amended complaint because it was the operative complaint when the Township and Worthen-Barnes filed their summary judgment motions. We do not address the claims against defendant Imbert Walker, who has not participated in the appeal, because plaintiff does not argue the court erred by granting summary judgment to Walker. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("[I]ssue[s] not briefed on appeal [are] deemed waived."); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

7

In a September 15, 2017 order, the court granted in part defendants' motion for partial dismissal of the complaint.[4] The order dismissed: all claims against Walker without prejudice; the second, fifth, seventh, and ninth counts against the Township with prejudice, and the eighth count without prejudice; and the first count against Worthen-Barnes with prejudice, and the eighth count against her without prejudice. In a December 15, 2017 order, the court granted in part plaintiff's motion for reconsideration and reinstated the eighth count against the Township and Worthen-Barnes.

Following entry of the court's September 15 and December 15, 2017 orders, the causes of action remaining against the Township included: negligent

---

[4] The court's September 15, 2017 order is not a paradigm of clarity. In part, it consists of a grid with each of the counts in the complaint listed by number and a handwritten, abbreviated description of the asserted cause of action, and boxes that are checked off to indicate which counts are dismissed as to each defendant and whether the counts are dismissed with or without prejudice. We interpret the handwritten notations to also indicate that the court merged the fourth and tenth counts with the third count, and the seventh count with the second count. We also interpret the lack of a check in the box next to a defendant's name as indicating the court denied the defendant's motion to dismiss the corresponding count against the designated defendant. There is nothing in the briefs of the parties on appeal suggesting a different interpretation of the order. Because "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for [trial courts'] ultimate conclusion[s]," Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)), orders clearly and precisely setting forth a trial court's actions and directives are essential to proper appellate review.

training and supervision (first count); violations of plaintiff's rights under the New Jersey Constitution and violation of N.J.S.A. 10:6-2 (third, fourth, sixth, and tenth counts); false arrest and false imprisonment (fifth count); and violation of the LAD by failing to provide or furnish a reasonable accommodation, N.J.S.A. 10:5-4 and -12(f) (eighth count).

Following entry of the orders, the following causes of action remained against Worthen-Barnes: reckless or intentional infliction of emotional distress (second count); violations of plaintiff's rights under the New Jersey Constitution and violation of N.J.S.A. 10:6-2 (third, fourth, sixth, and tenth counts); false arrest and false imprisonment (fifth count); infliction of emotional distress (seventh count); violation of the LAD by failing to provide or furnish a reasonable accommodation, N.J.S.A. 10:5-4 and -12(f) (eighth count); and malicious prosecution (ninth count).

Defendants later filed separate motions for summary judgment, and plaintiff cross-moved for summary judgment. Following oral argument on the motions, the court rendered a decision from the bench granting defendants' motions and denying plaintiff's cross motion. In its decision, the court summarized the parties' arguments, detailed certain legal principles related to some of the causes of action, and generally described the summary judgment

standard and the defense of qualified immunity. The court noted plaintiff's decision not to depose any witnesses during discovery and his failure to produce evidence or supply expert testimony establishing defendants' liability on plaintiff's causes of action.

The court found the Township is entitled to judgment as a matter of law on plaintiff's negligent supervision claim because

> [p]laintiff has not established that the . . . Township's [p]olice [d]epartment had reason to know of . . . Worthen[-]Barnes'[s] alleged dangerous propensity[,] if one exists[,] towards wrongful arrests or the violation of civil rights against foreigners[,] or could reasonably have foreseen that those characteristics could cause a risk of harm to motorists like plaintiff.

The court also found plaintiff did not present evidence establishing a negligent training claim, finding "[p]laintiff has not identified a deficiency in [the Township's police department's] training policy, deposed anyone to obtain information on how officers were trained, or proffered any expert testimony on this issue."

The court further determined plaintiff failed to present evidence establishing his causes of action for violations of his constitutional rights. The court explained:

> [P]laintiff has claimed several times throughout the amended complaint that it is custom for [the Township's p]olice [d]epartment to provide untrue statements to support unlawful arrests and to cover up unlawful activity, but has provided no factual evidence supporting these claims or regarding any specific municipal policy or custom . . . to . . . link [the Township] to any constitutional violations on the part of any officers.

The court also found defendants are entitled to summary judgment on plaintiff's asserted tort claims because it is undisputed plaintiff did not incur medical treatment expenses sufficient to satisfy the pain and suffering damage threshold for a tort claim against a public entity and employee under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. The court concluded plaintiff failed to present any evidence he incurred the $3,600 in medical treatment expenses required to satisfy the TCA threshold for a pain and suffering award. N.J.S.A. 59:9-2(d).

The court also determined plaintiff did not present evidence establishing he was denied a public accommodation based on his nationality in violation of the LAD, N.J.S.A. 10:5-4 and -12(f). In its opinion from the bench, the court found plaintiff failed to present evidence he "was treated differently than a non-Guyanese American that was being jailed by the" Township's police department,

11

and plaintiff's "mere allegation that an officer told him . . . he was being mistreated because he was a foreigner does not establish discrimination."

In its order granting defendants summary judgment on plaintiff's denial of public accommodations claim, the court explained that

> [p]laintiff has not shown that he actually sought or was denied accommodations on account of his national origin[;] there is no evidence, deposition testimony, or expert opinion that shows . . . [p]laintiff was treated differently by [the Township's p]olice [d]epartment or . . . Worthen[-]Barnes[;] and mere allegations do not establish discrimination.

Based on those findings, the court entered an order granting defendants' summary judgment motions and denying plaintiff's cross-motion. This appeal followed.

On appeal, plaintiff presents the following arguments for our consideration:

> Point I
>
> DEFENDANTS' OWN RECORDS SHOW THEIR NON-ENTITLEMENT FOR SUMMARY JUDGMENT RELIEF.
>
> Point II
>
> A REASONABLE JURY WOULD FIND [THE TOWNSHIP'S] SUBMISSIONS AND LACK OF SAME WOULD SHOW PLAINTIFF HAS MET HIS

12

BURDEN TO PROVE HIS CLAIMS OF NEGLIGENT SUPERVISION AND NEGLIGENT TRAINING.

Point III

PLAINTIFF'S CLAIMS FOR NEGLIGENT SUPERVISION/NEGLIGENT HIRING ARE VALID.

Point IV

PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF VIOLATION OF THE PLACE OF PUBLIC [ACCOMMODATION] DISCRIMINATION PREDICATED UPON[:]

A. WORTHEN-BARNES['S] STATEMENT TO PLAINTIFF THAT THIS IS HAPPENING TO YOU BECAUSE YOU ARE A FOREIGNER;

B. THE REASONING IN [THE] UPCHURCH v. CITY OF ORANGE DECISION THAT DEFENDANTS HAD NOT PRODUCED ANY POLICY ON DIFFERENTIAL TREATMENT AND NO TRAINING ON THE SUBJECT MATTER; AND

C. THE HOLMES DECISION CITED BY [THE MOTION COURT].

Point V

NEGLIGENT SUPERVISION AND TRAINING CLAIMS ARE ENTITLED TO SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AS SAID CLAIM IS PROVEN BY [THE TOWNSHIP'S] OWN RECORDS.

A-0034-19

II.

The point headings in plaintiff's brief on appeal reflect the assertion of arguments directed to two parts of the court's order. First, the headings for Points I, II, III, and V pertain solely to the summary judgment award on the first count, which alleges the Township negligently supervised and trained Worthen-Barnes.[5] Second, the Point IV heading asserts only that the court erred by granting summary judgment to the Township and Worthen-Barnes on the eighth count, which alleges a violation of the LAD by denying plaintiff equal treatment in a place of public accommodation because of his national origin.

In his brief on appeal, plaintiff variously, and oftentimes vaguely, intersperses suggestions of other arguments challenging the summary judgment order, but defendants and this court have "a right to know precisely what legal

---

[5] The headings for Point II and III are expressly limited to plaintiff's challenge to the court's summary judgment award to the Township on the first count, and the Point V heading claims the court erred by denying plaintiff's motion for summary judgment on the first count. The Point I heading more generically asserts the Township's "own records" demonstrate it is not entitled to summary judgment, but the records to which the heading makes reference are reports showing Worthen-Barnes's police department internal affairs history, and plaintiff relies on those records for the singular purpose of challenging the court's summary judgment award on the first count. Thus, the seemingly broad argument asserted in the Point I heading is limited to plaintiff's contention, which is more directly asserted in the Point II, III, and V headings, that the Township is not entitled to summary judgment on the first count and plaintiff is entitled to summary judgment on that count.

14

arguments are being made and . . . need not respond to oblique hints and assertions" that are made in a cursory manner and are untethered to the point headings required by Rule 2:6-2(a)(6) properly identifying the arguments relied on to support the appeal. Almog v. Israel Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997); see also Mid-Atl. Solar Energy Indus. Ass'n v. Christie, 418 N.J. Super. 499, 508 (App. Div. 2011) (refusing to address an issue raised in a two-sentence paragraph in a brief "without a separate point heading, in violation of Rule 2:6-2(a)[(6)]"). It is not the role of this court to weave together the fabric of an argument on a party's behalf based on threads vaguely scattered amongst the issues that are properly identified in accordance with Rule 2:6-2(a)(6). We limit our consideration "of the issues to those arguments properly made under appropriate point headings," Almog, 298 N.J. Super. at 155, and therefore only address plaintiff's arguments that the court erred by: granting the Township summary judgment on the negligent training and supervision cause of action; denying his cross-motion for summary judgment on the negligent training and supervision claim; and granting the Township and Worthen-Barnes summary judgment on the claim they violated the LAD by discriminating against him based on his national origin in a place

of public accommodation,[6] see R. 2:6-2(a)(6); see also Mid-Atl. Solar Energy Indus., 418 N.J. Super. at 508; Almog, 298 N.J. Super. at 155-56.

We review an order granting summary judgment applying the same standard as the trial court. State v. Perini Corp., 221 N.J. 412, 425 (2015) (first citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013); and then citing Liberty Surplus Ins. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). In considering a motion for summary judgment, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer, 198 N.J. at 604 n.1 (first citing R. 4:46-2(c); and then citing Brill, 142 N.J. at 540). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are subject to the de novo

---

[6] Because plaintiff does not present any arguments in any of the point headings concerning the grant of summary judgment to defendants on the second, third, fourth, fifth, sixth, seventh, ninth, and tenth counts, we do not address those claims on appeal, and we affirm the court's summary judgment order as to those claims. See Sklodowsky, 417 N.J. Super. at 657; Jefferson Loan Co., 397 N.J. Super. at 525 n.4.

A-0034-19

standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

The first count of the complaint avers that the alleged wrongful stop, arrest, detention, and prosecution of plaintiff were the result of the Township's negligent training and supervision of Worthen-Barnes. Negligent training and supervision claims "are not forms of vicarious liability," but rather "are based on the direct fault of an employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). To establish a party acted negligently, a plaintiff must present evidence establishing "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). Where, as here, a plaintiff claims an employer breached a duty "relate[d] to the risk of harm created by [an employee], the plaintiff must prove that the [employer] knew or had reason to know of the risk of harm in question." G.A.-H., 238 N.J. at 415.

To establish a negligent training or supervision claim, a plaintiff must present evidence demonstrating:

> (1) that the employer "knew or had reason to know of the particular unfitness, incompetence[,] or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to

17

other persons" and (2) "that, through the negligence of the employer in [training or supervising] the employee, the latter's incompetence, unfitness[,] or dangerous characteristics proximately caused the injury."

[Id. at 416 (quoting Di Cosala v. Kay, 91 N.J. 159, 173 (1982)).]

Stated differently, a "plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." Ibid.

Plaintiff argues the Township knew or had reason to know that the purported failure of the Township to properly train or supervise Worthen-Barnes created a risk that she would wrongfully stop, arrest, detain, and prosecute him. Plaintiff also contends the Township's failure to properly train or supervise Worthen-Barnes resulted in the harm he allegedly suffered as a result of Worthen-Barnes's wrongful actions.

In support of his contention, plaintiff relies exclusively on the records summarizing Worthen-Barnes's internal affairs history with the Township's police department. Plaintiff argues the records establish the Township knew or should have known Worthen-Barnes posed a risk to take the purported wrongful actions of stopping, arresting, detaining, and charging him on April 12, 2015,

18

without any lawful basis and because of his national origin. We are not persuaded.

The records upon which plaintiff relies provide scant information. In cursory form, the records provide dates and general descriptions of the subjects of police department internal affairs issues involving Worthen-Barnes, such as "differential treatment," "motor vehicle accident," "abuse of sick time," and "insubordination." Some of the entries include what appear to be the resolutions or dispositions of the internal affairs issues, including "sustained," "unfounded," "withdrawn," and "exonerated," and, in some instances, what appears to be discipline imposed, such as "written reprimand," or "suspension."

The internal affairs records upon which plaintiff solely relies are bereft of any competent evidence establishing the facts and circumstances giving rise to the issues presented to internal affairs, the nature and extent of any investigations, and the circumstances surrounding the disposition of the issues presented. Plaintiff did not depose any witnesses with knowledge of the records or the facts underlying the cursory synopses of Worthen-Barnes's internal affairs history. Plaintiff also did not depose anyone with knowledge concerning the preparation of the records or the meaning of the entries in them. Most importantly, the records do not include any competent evidence demonstrating

19

that Worthen-Barnes presented a risk of stopping, arresting, detaining, or charging individuals without a proper basis or based on their national origin, nor does the information support a reasonable inference Worthen-Barnes presented such a risk.[7]

In opposition to the Township's summary judgment motion, plaintiff could not properly rely on speculation as to what the records demonstrated concerning the alleged risk of harm presented by Worthen-Barnes. See Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (explaining "[c]ompetent opposition" to a summary judgment motion "requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments'" (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563

---

[7] Plaintiff incorrectly relies on Worthen-Barnes's internal affairs history following the April 12, 2015 incident involving plaintiff. Events occurring after the incident involving plaintiff could not properly be considered in determining whether the Township knew or should have known on April 12, 2015 that Worthen-Barnes posed a risk of harm to stop, arrest, detain, and charge an individual without a proper basis or based on the individual's national origin. See Wilson ex rel. Manzano v. City of Jersey City, 415 N.J. Super. 138, 167 (App. Div. 2010) (finding evidence of disciplinary actions against a police officer for incidents occurring subsequent to the events giving rise to a cause of action for negligent retention of the officer were not relevant to the negligent retention claim), rev'd on other grounds, 209 N.J. 558 (2012). Thus, Worthen-Barnes's post-April 12, 2015 internal affairs history is not relevant to a determination of the Township's summary judgment motion on count one, or plaintiff's cross-motion for summary judgment on that count.

(App. Div. 2005))). Plaintiff was obligated to present competent evidence establishing, or supporting reasonable inferences establishing, his cause of action for negligent training and supervision. See ibid.

Lacking such evidence, plaintiff failed to demonstrate an essential element of his negligent training and supervision claim—that the Township knew or had reason to know, or could have reasonably foreseen, that Worthen-Barnes posed a risk of engaging in the wrongful conduct plaintiff alleges in the complaint. See G.A.-H., 238 N.J. at 416; cf. Denis v. City of Newark, 307 N.J. Super. 304, 313-14 (App. Div. 1998) (finding the plaintiff established a negligent retention cause of action in part because the police officer who allegedly assaulted the plaintiff had been "disciplined for assaultive behavior on defenseless citizens" on two occasions prior). For that reason alone, we affirm the summary judgment award to the Township on the first count and the court's denial of plaintiff's cross-motion for summary judgment on that count.

Plaintiff's negligent training and supervision claims also fail because he did not present any evidence concerning the Township's training and supervision of Worthen-Barnes. Plaintiff did not depose anyone concerning the Township's training and supervision of Worthen-Barnes, and plaintiff apparently did not otherwise obtain any competent evidence during discovery establishing the

A-0034-19

manner in which the Township trained or supervised her. Plaintiff also failed to present any evidence as to the manner in which the training and supervision of Worthen-Barnes was deficient, or how she should have been trained or supervised differently. See, e.g., Wilson ex rel. Manzano, 415 N.J. Super. at 167 (noting the plaintiff offered evidence supporting a negligent training and supervision claim by showing the defendant employer deviated from the internal procedures for training and supervising certain employees, the defendant "did not properly disseminate" a manual defining the employees' job duties, and the defendant failed to "ensure . . . the employees retained their [m]anuals"). Simple logic compels the conclusion that plaintiff could not, and did not, demonstrate the Township negligently trained or supervised Worthen-Barnes where he failed to present any evidence establishing the manner in which the Township trained or supervised her, or failed to do so, or otherwise demonstrating the Township's training or supervision was negligent.

Plaintiff's arguments are based on conclusory assertions Worthen-Barnes should have been trained better, and he asserts the Township's records do not "indicate any 'anger management' that was required" for Worthen-Barnes; that there was "no training in any document submitted by [the Township] to show sensitivity training . . . [or] equal public accommodations training"; and that

22

"[t]here is . . . no indication in any of defendant's submissions to demonstrate training in writing, the versions, offenses which were charged against [p]laintiff." Plaintiff, however, does not cite to any competent evidence demonstrating the Township knew or had reason to know "anger management," "sensitivity training," or "equal public accommodations training" were necessary to address some risk that Worthen-Barnes would engage in the alleged unlawful acts described in the complaint; that such training was necessary; or how the absence of the training proximately caused plaintiff's purported damages. G.A.-H., 238 N.J. at 416. The mere fact that alleged internal affairs complaints were lodged against Worthen-Barnes, without more, does not create a genuine issue of material fact as to whether she posed a risk of engaging in the alleged unlawful stop, arrest, detention, and charging of plaintiff averred in the first count of the complaint.

We have held that expert testimony is required to explain police procedures because "most citizens . . . have no personal knowledge of how the police should ordinarily . . . conduct themselves." McKinney v. E. Orange Mun. Corp., 284 N.J. Super. 639, 654 (App. Div. 1995). We have also explained that expert testimony is required to address issues related to a police department's alleged negligent failure to follow its procedures for training and supervising its

employees because the issues "posed by [those] circumstances [are] well outside the awareness of a person of average intelligence and ordinary experience." Wilson ex rel. Manzano, 415 N.J. Super. at 167. In Wilson ex rel. Manzano, we affirmed a trial court's determination that "the mere actions of the employees themselves without expert testimony to establish the standard of care [was] insufficient to substantiate [the] plaintiff's claim that [the police department] fell below the standard of care in training . . . [or] supervising . . . the individual defendants." Id. at 166.

Although expert testimony may not be required in every case where a plaintiff is allegedly injured by a police officer and later asserts a negligent training or supervision claim against the officer's employer, plaintiff's negligent training and supervision claim, as articulated in his brief on appeal, clearly requires competent expert testimony explaining the applicable standards for police training and supervision, whether the Township deviated from those standards, and whether the deviation proximately caused plaintiff's alleged injuries. See id. at 166-67. Plaintiff offered none.

In sum, we are convinced the motion court correctly determined plaintiff failed to present competent evidence supporting his negligent training and supervision claim against the Township. Plaintiff bore the burden of presenting

24

evidence demonstrating the Township knew or had reason to know Worthen-Barnes posed a risk of stopping, arresting, detaining, and charging him without any legal basis or because of his national origin, see G.A.-H., 238 N.J. at 416, but he failed to sustain that burden. We therefore affirm the court's order granting the Township summary judgment on the first count, and, for the same reasons, we affirm the court's denial of plaintiff's cross-motion for summary judgment on that count.

Although unnecessary to our affirmance of the court's order granting the Township summary judgment on the first count and denying plaintiff's cross-motion for summary judgment on that count, we also affirm the order because plaintiff failed to present evidence satisfying the statutory threshold for an award of pain and suffering damages under the TCA.

Under the TCA, a plaintiff cannot collect damages against a public entity for pain and suffering unless he or she meets the "verbal threshold" established by the statute. Toto v. Ensuar, 196 N.J. 134, 144 (2008); see also Brooks v. Odom, 150 N.J. 395, 402 (1997) (finding that, in accordance with the TCA, "a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravated circumstances" (citation omitted)). N.J.S.A. 59:9-2(d) states:

No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement[,] or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical[,] and dental treatment of the claimant for such injury, sickness[,] or disease, including prosthetic devices and ambulance, hospital[,] or professional nursing service.

Our Supreme Court "established 'a two-pronged test that a plaintiff must satisfy in order to collect pain and suffering damages under N.J.S.A. 59:9-2[(d)].'" Toto, 196 N.J. at 145 (quoting Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329 (2003)). "To satisfy the test and vault the threshold, '[a] plaintiff must show,'" in addition to the required $3,600 in treatment expenses, "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Ibid. (alteration in original) (quoting Knowles, 176 N.J. at 329).

We need not address whether plaintiff presented sufficient competent evidence establishing he suffered a substantial permanent loss of a bodily function, in the form of his claimed post-traumatic stress disorder, as a result of

26

the April 12, 2015 incident.[8] That is because plaintiff's negligent training and supervision claim fails because he did not present any evidence demonstrating he incurred medical treatment expenses related to the injuries he allegedly suffered as a result of the April 12, 2015 incident. That failure alone required the award of summary judgment to the Township on the negligence claim asserted in the first count. N.J.S.A. 59:9-2(d); see also Reale v. Twp. of Wayne, 132 N.J. Super. 100, 116 (Law Div. 1975) (finding that without "competent evidence of [past or] anticipated future medical expenses," a plaintiff cannot satisfy the medical treatment expense threshold of the TCA).

## III.

Plaintiff also contends the court erred by granting the Township's and Worthen-Barnes's respective motions for summary judgment on the eighth count, which alleged they violated the LAD by discriminating against him based

---

[8] In support of his claimed injury, plaintiff relied on reports from psychologist Dr. Daniel Williams. Because it unnecessary to our determination that plaintiff's negligence claim against the Township is barred under N.J.S.A. 59:9-2(d), we do not decide if Dr. Williams's report includes an inadmissible net opinion concerning the nature and extent of plaintiff's alleged injury, see, e.g., Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011) (explaining "an expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered"), and, if not, whether the opinion is otherwise sufficient to satisfy the injury threshold under the statute, see N.J.S.A. 59:9-2(d).

on his national origin in the furnishing of a place of public accommodation. The motion court granted summary judgment on the claim based on its findings plaintiff failed to demonstrate he sought or was denied a public accommodation and that plaintiff did not present evidence that he "was treated differently than a non-Guyanese American that was being jailed by the" Township's police department. The court further found plaintiff's "mere allegation" that Worthen-Barnes told him "he was being mistreated because he was a foreigner does not establish discrimination."

The LAD provides, in part, that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . national origin." N.J.S.A. 10:5-4. More particularly, N.J.S.A. 10:5-12(f)(1) provides that:

> [i]t shall be . . . unlawful discrimination . . . [f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from[,] or deny to any person any of the accommodations, advantages, facilities[,] or privileges thereof, or to discriminate against any person in the furnishing thereof, . . . on account of . . . national origin . . . .

A-0034-19

"The LAD should be construed liberally," and "[i]ts purpose is 'nothing less than the eradication of the cancer of discrimination.'" Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 345 (App. Div. 2004) (quoting Dale v. Boy Scouts of Am., 160 N.J. 562, 584 (1999), rev'd & remanded on other grounds, 530 U.S. 640 (2000)). N.J.S.A. 10:5-5(l) broadly defines "[a] place of public accommodation," but "[t]he listed places of public accommodation are merely illustrative of the accommodations the Legislature intended to be within the scope of the statute," Ptaszynski, 371 N.J. Super. at 345 (quoting Fraser v. Robin Dee Day Camp, 44 N.J. 480, 486 (1965)), and "application of the LAD is not limited only to 'places' of public accommodation," ibid. (quoting Dale, 160 N.J. at 588).

In Ptaszynski, we held that a municipal police department and the department's individual officers qualify as "a place of public accommodation" under the LAD, and that discrimination in the furnishing of those public accommodations violates the LAD. Id. at 347. We explained that "[a] municipal police force is nothing more than 'an executive and enforcement function of municipal government,'" ibid. (quoting N.J.S.A. 40A:14-118), and that, "[a]s a public entity, by its very nature a police force is a place of public accommodation," ibid. We further noted that "[i]f a police force is not subject

A-0034-19

to the LAD, subject to certain constitutional limitations, the officers may be free to discriminate." Ibid.

More recently in Holmes v. Jersey City Police Department, we reversed an order granting summary judgment dismissing a transgender plaintiff's claim of public accommodation discrimination in violation of the LAD based on allegations that, following the plaintiff's arrest, police subjected the plaintiff to a hostile environment because plaintiff was transgender. 449 N.J. Super. 600, 601, 606 (App. Div. 2017). In granting summary judgment, the trial court analyzed the claim under the standard applicable to the assessment of a hostile environment religious discrimination claim in the employment context. Id. at 603. We determined the trial court erred by relying on the standard because it had been rejected by the Court in Cutler v. Dorn, 196 N.J. 419, 440 (2008). Ibid.

We also explained "[t]he prohibition of discrimination in relation to public accommodation is functionally distinct from the ban on employment discrimination." Id. at 603-04 (alteration in original) (quoting Thomas v. Cnty. of Camden, 386 N.J. Super. 582, 590 (App. Div. 2006)). "[I]n the context of public accommodation discrimination, hostile comments that might not suffice to create a hostile environment in a work context may nonetheless violate the LAD." Id. at 604. For example, we noted that in Franek v. Tomahawk Lake

Resort, 333 N.J. Super. 206, 211 (App. Div. 2000), we found that "proof of one discriminatory comment by the owner of a recreation facility, that he did not want 'those [disabled] people' to use the premises, was sufficient to allow the plaintiff to survive a summary judgment motion." Holmes, 449 N.J. Super. at 604 (alteration in original). In Holmes, we also concluded that because the police officers who made the derogatory comments concerning the plaintiff's transgender status were "in a position of authority over [the] plaintiff, who was their prisoner," "the impact of threatening and harassing conduct may be magnified, even if it only occurs on one day." Id. at 605. We found the plaintiff's evidence of such conduct created a genuine issue of material fact as to whether the police department violated the LAD by discriminating against the plaintiff in a place of public accommodation. Id. at 605-06.

Measured against these principles, and giving plaintiff the benefit of all reasonable inferences based on the evidence presented, we are convinced the court erred by granting the Township and Worthen-Barnes summary judgment on plaintiff's denial of public accommodations claim. The Township and Worthen-Barnes contend, and the motion court found, plaintiff's claim failed as a matter of law because he did not seek a public accommodation and was not denied a public accommodation. The argument and the court's finding ignore

31

that the LAD "not only prohibits the owner or operator of a public accommodation from denying the use of a facility on forbidden grounds, but it also renders unlawful any acts 'discriminat[ing] against any person in the furnishing'" of a public accommodation. Franek, 333 N.J. Super. at 217-18 (alteration in original) (quoting N.J.S.A. 10:5-12(f)(1)).

Because the Township's police department, Worthen-Barnes, and the other officers are places of public accommodation under the LAD, Ptaszynski, 371 N.J. Super. at 347, Worthen-Barnes's and the other officers' interactions with plaintiff on April 12, 2015 constituted the furnishing of public accommodations. Plaintiff claims those interactions, which include the motor vehicle stop, his arrest and detention, and his prosecution on charges that were later dismissed due to lack of prosecution, were unlawfully based on his national origin. Plaintiff's contention is supported by competent record evidence: he testified Worthen-Barnes stated to him, "We do this to you because you're a . . . foreigner." For purposes of defendants' summary judgment motions, we accept plaintiff's testimony as true and find it provides direct evidence Worthen-Barnes acted on April 12, 2015 in the furnishing of public accommodations—the performance of her services as a police officer—in a discriminatory manner based on plaintiff's national origin. Worthen-Barnes said that was the case. Her

A-0034-19

statement further provides circumstantial evidence the other officers acted in a discriminatory manner as well.

In <u>Holmes,</u> we noted "threatening and harassing conduct" made by police officers based on an individual's gender identity or expression may alone create a hostile environment constituting unlawful discrimination in a place of public accommodation in violation of the LAD. 449 N.J. Super. at 605-06. Here, plaintiff's claim is not founded on words alone, and we do not interpret his claim as limited to hostile environment discrimination. He does not only contend defendants created a hostile environment based on his national origin; he contends Worthen-Barnes actually exercised her authority as a police officer to stop, arrest, detain, and charge him with offenses (all of which were later dismissed due to lack of prosecution) because of his national origin. According to plaintiff, that is precisely what Worthen-Barnes told him. Worthen-Barnes's statement creates a genuine issue of material fact as to whether the actions of the officers constituted unlawful discrimination in a place of public accommodation in violation of the LAD. We therefore vacate the court's

33

summary judgment award on the eighth count, and remand to the trial court for further proceedings on that count of the complaint.[9]

Any arguments made on plaintiff's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We decide only that the court erred by granting defendants summary judgment on the eighth count. We do not offer any opinion on the merits of plaintiff's claim or on any defenses that may be available to the claim. On remand, the court shall permit such additional discovery, motion practice, and other proceedings as it deems appropriate in the normal course.

A-0034-19